UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRESITA BOYLE,

    Plaintiff,

    v.

ARROW FINANCIAL SERVICES, LLC, et al.,

    Defendants.

_____/

No. C 08-3381 PJH

**ORDER GRANTING DEFENDANT NELSON, WATSON & ASSOCIATES, LLC'S MOTION TO DISMISS**

    The motion of Defendant Nelson, Watson & Associates, LLC ("Nelson") to dismiss came on for hearing before this court on September 24, 2008. Plaintiff Andresita Boyle ("Boyle") appeared through her counsel, Irving L. Berg. Defendant Nelson appeared through its counsel, Andrew M. Steinheimer. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS Nelson's motion to dismiss.

## BACKGROUND

    This is a proposed class action arising out of 15 U.S.C. §§ 1692(e) and (e)(10), provisions of the federal Fair Debt Collection Practices Act ("FDCPA"). Boyle obtained a credit card from Providian National Bank ("Providian"). Her credit card account was acquired by Washington Mutual ("WaMu") when WaMu bought Providian. Boyle was unable to pay her balance on a regular basis and amassed a debt of approximately $2,000. WaMu sold Boyle's account to Defendant Arrow Financial Services ("Arrow"), who sent three collection letters to Boyle between December 19, 2007 and March 24, 2008. Unable to collect or settle Boyle's debt, Arrow enlisted Nelson to collect it. See Complaint.

    Nelson sent a collection letter to Boyle on June 4, 2008. The letter indicated that her total balance was $2,244.48, which included $1,874.68 in principal and $369.80 in interest.

1  The letter also stated: "As required by law, you are hereby notified that a negative credit
2  report reflecting on your credit record may be submitted to a credit reporting agency if you
3  fail to fulfill the terms of your credit obligations."  Complaint, Ex. G.  This notice is at the
4  heart of the dispute between Boyle and Nelson.

5  Boyle filed suit against defendants Arrow, Nelson, and Ronald Lavin[1], alleging
6  unlawful debt collection practices.  She alleges that (1) she received notice from WaMu that
7  it intended to make a negative credit report because of her failure to pay the debt; (2) the
8  law required that WaMu make such report; (3) the law did not require subsequent notice of
9  a negative credit report to the consumer, and (4) Nelson made an unlawful negative credit
10 report threat by sending her the notice.  Complaint, ¶¶ 16, 17, 30.

11 Boyle asserts two causes of action against Nelson in the complaint.  The first is that
12 in attempting to collect her debt, Nelson violated 15 U.S.C. §§ 1692(e) and (e)(10) by
13 making false, deceptive, and misleading representations.  She alleges that Nelson made a
14 false, deceptive, and misleading statement in stating that the law required Nelson to submit
15 a negative credit report if she failed to fulfill the terms of her credit obligation.  Her second
16 cause of action against Nelson is that Nelson's conduct violated Cal. Civ. Code § 1788.17,
17 the corresponding provision of the Rosenthal Act, California's equivalent of the FDCPA.
18 See Complaint, ¶¶ 30, 37.

19 Nelson now moves to dismiss the claims against it under Federal Rule of Civil
20 Procedure 12(b)(6) for failure to state a claim.

**DISCUSSION**

A.    Legal Standard

In evaluating a motion to dismiss, all allegations of material fact are taken as true
and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v.
Lokelani Bernice Pauai Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000) (citations omitted).
In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough

---

[1] Lavin is a debt collector who directs and controls the collection strategy at Arrow.

2

to raise his/her right to relief "above the speculative level." See Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007). While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. Twombly, 127 S. Ct. at 1974.

B.  Legal Analysis

Boyle asserts that Nelson falsely implied that it would submit a negative credit report and that it was required by law to submit such report; that Nelson was not required by law to send the notice, and therefore, it falsely stated it was required by law to do so; and that Nelson's notice amounted to coercion, an abusive practice that the FDCPA sought to prevent. For the reasons discussed below, none of these allegations survives Nelson's motion to dismiss.

1.  Claim that Nelson implied that it would submit a negative credit report or that it was required by law to submit such report

Boyle alleges in her complaint that Nelson violated 15 U.S.C. § 1692e because Nelson used false representations in stating that it was required by law to submit a negative credit report. See Complaint, ¶ 35. Then in her opposition, she claims that implying multiple times that a debt would be reported violated § 1692e. See Opposition, p. 6. Her allegations fail because the notice provision does not imply either of those two things.

In the Ninth Circuit, the issue of whether the language of a collection letter violates the FDCPA is a matter of law. Terran v. Kaplan, 109 F.3d 1428, 1431-32 (9th Cir. 1997). In making that determination, the Court applies an objective standard based on the "least sophisticated debtor." Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1225-27 (9th Cir. 1988). The court finds, under that standard, that Boyle's interpretation is not reasonable. See Cruz v. MRC Receivables Corp., No. C-07-5688 SC, 2008 WL 2627143,

1  at *9 (N.D. Cal. July 3, 2008) (stating, in response to the same interpretation of the same
2  notice provision, that the interpretation "simply misstates the notice").

3       The notice provision states only that the law requires that the consumer be notified
4  before a negative credit report may be submitted.  It does not suggest that the credit
5  agency is *required* to submit a negative credit report or that it *would* submit a report.
6  Indeed, the notice simply says that a negative credit report *may* be submitted.  Boyle
7  cannot base her claim for violation of the FDCPA on statements that Nelson did not make.
8  See Cruz, 2008 WL 2627143, at *9 (stating that holding defendants liable for statements
9  that they did not make would require an unreasonable interpretation of the notice provision
10 and the FDCPA).  Accordingly, these claims do not survive the 12(b)(6) motion.

11       2.     Claim that Nelson falsely stated it was required by law to send notice

12       Boyle asserts that because WaMu and Arrow had previously notified her that a
13 negative credit report might be submitted, Nelson was no longer required by law to send
14 her another notice, and that Nelson therefore violated the FDCPA by falsely stating that the
15 notice was "required by law."  This argument fails for two reasons.

16       First, Boyle cites no authority for the proposition that a creditor is exempt from
17 providing notice if *other* creditors have provided notice.  Indeed, a plain reading of the law
18 requires Nelson to send its own notice.  See 15 U.S.C. § 1681s-2(a)(7) ("In general, if any
19 financial institution that extends credit and regularly and in the ordinary course of business
20 furnishes information to a consumer reporting agency . . . furnishes negative information to
21 such an agency regarding credit extended to a customer, the financial institution shall
22 provide a notice of such furnishing of negative information, in writing, to the customer.");
23 Cal. Civ. Code § 1785.26(b) ("A creditor may submit negative credit information concerning
24 a consumer to a consumer credit report agency, only if the creditor notifies the consumer
25 affected.").  These statutes do not exempt a creditor from providing notice if *other* creditors
26 have provided notice.

27       Second, even assuming the notice requirement has been satisfied by the previous
28 notices, the law does not prohibit a creditor from giving notice just because the affected

consumer has already been put on notice. See Cruz, 2008 WL 2627143, at *9 ("Whether the notice was permitted and whether it was required are distinct questions."). See also 15 U.S.C. § 1681s-2(a)(7) ("After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency . . . with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer."); Cal. Civ. Code § 1785.26(b) ("After providing this notice, a creditor may submit additional information to a credit reporting agency respecting the same transaction . . . without providing additional notice."). Sending additional notices, while not required by law, does not violate the FDCPA. Accordingly, Boyle's complaint cannot survive a 12(b)(6) dismissal based on this allegation.

       3.     Claim that Nelson's notice was coercive

Boyle argues that Nelson's notice, the fifth notice she has received from debt collectors, was sent to coerce payment. She contends that this notice violates 15 U.S.C. § 1692f, which prohibits debt collectors from using unfair or unconscionable practices. She also argues that the court should not narrowly interpret the congressional intent behind the FDCPA as preventing only obscene or profane language, threats of violence, and telephone calls at unreasonable hours.

In enacting the FDCPA, Congress intended to prevent abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers. See Turner v. Cook, 362 F.3d 1219, 1226 (9th Cir. 2004). Although the FDCPA does not limit its application to threats of violence or the use of profane language, normal rules of statutory construction require that the harassment or abuse condemned be of the same nature. Fox v. Citicorp Credit Servs., 15 F.3d 1507, 1518 (9th Cir. 1994).

> Congress was concerned with disruptive, threatening, and dishonest tactics. The Senate Report accompanying the [FDCPA] cites practices such as threats of violence, telephone calls at unreasonable hours [and] misrepresentation of a consumer's legal rights. In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which . . . would likely disrupt a debtor's life.

5

Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 938-39 (9th Cir. 2007) (internal citations omitted).

The notice provision sent by Nelson is not an action similar to the types of abusive tactics that Congress sought to prevent.  It is not dishonest, threatening, or disruptive.  It is only one letter.  At most, it is the fifth collection letter Boyle has received from WaMu, Arrow, and Nelson over at least a six-month period.  Over the ordinary course of business, most people receive credit card statements once a month.  Thus, this allegation is not plausible on its face and also fails to survive a 12(b)(6) motion to dismiss.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant Nelson's motion to dismiss the FDCPA claim against it.  The supplemental state claim also fails, as Boyle has not identified any independent violation of the Rosenthal Act.  Given that the entirety of these claims against Nelson hinges on plaintiff's misconstruction of the notice, the court finds that any amendment would be futile, and hence the dismissal is with prejudice.

**IT IS SO ORDERED.**

Dated: October 2, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge